## MARTIN v. WILSON.

(Circuit Court of Appeals, Second Circuit.   June 10, 1907.)

No. 222.

EQUITY—JURISDICTION—ADEQUATE REMEDY AT LAW.

> A bill in equity alleged that complainant owned certain stock and bonds of a railroad company; that defendant represented that he had contracted to sell a large amount of the stock and bonds of said company to another company and agreed to pay complainant the same prices he was to receive for his stock and bonds and for those of other holders which he might secure; that a written contract to that effect was entered into between them and carried out, but that such representations were false and fraudulent, in that defendant was to receive, and did receive, larger prices than those stated, the exact amount of which were unknown to complainant. *Held*, that such bill did not state a cause of action cognizable by a federal court of equity, complainant having on the facts alleged a complete and adequate remedy at law by an action to recover damages for the fraud, and the amount actually received by defendant being as readily ascertainable in such an action as in an equity suit.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 156.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

S. C. Carleton and Wm. J. Harding, for appellant.

Carter, Ledyard & Milburn, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge.   The salient allegations of the bill are as follows: That in July, 1892, the complainant stated to the defendant, who is the sole surviving partner of the firm of R. T. Wilson & Co., that he intended to bring an action, in which the said firm would be defendants, to contest the legality of the issue of certain bonds of the Louisville, New Orleans & Texas Railroad Company.   That the defendant thereupon stated and represented to the complainant that he was the president of the said railroad company and that his firm was the owner and holder of a large portion of the capital stock and of certain bonds of the said road and that his firm had agreed with the Illinois Central Railroad Company for the transfer to it of the control of the said Louisville Company.   That the firm of R. T. Wilson & Co. further stated that they were desirous of obtaining more bonds and stock of the Louisville Company than they then controlled to enable them to take advantage of their agreement with the Illinois Company and, for the purpose of inducing the complainant to part with his own bonds and stock and to procure the delivery of other like bonds and stock to the said firm, the defendant represented that only by dealing with his firm could complainant obtain more than $210 for each bond and $10 for each share of stock owned by him; which statement and representation was false and fraudulent.   That thereupon the said firm offered the complainant, if he would refrain from bringing said suit, that they would pay

155 F.—7

him for his bonds and stock the same price that they were to receive from the Illinois Company for their own bonds and stock. That they also offered to pay him the difference between the price at which he procured the bonds and stock of third parties to be delivered to them and the price which they were to receive for their own bonds and stock from the Illinois Company—the names of various owners and the amount of their holdings being particularly mentioned. That relying upon these false and fraudulent statements and representations the defendant entered into an agreement with the firm, a memorandum of which was reduced to writing and signed by complainant and said firm.

This agreement states in detail the bonds and stock which are to be sold and delivered and the prices to be paid therefor and, with the exception of a few unimportant formalities, concludes as follows:

"The $24,000 is all that is to be paid Martin under this agreement, except such profit as Mr. Martin may make on the bonds and stock below 25 cts. for the bonds and 10 cts. for the stock.

"The bonds and stock are to be paid for, to parties bringing them in, from time to time at such prices under 25 cts. and 10 cts. as Martin may designate; and if paid for at less than 25 cts. and 10 cts. the difference is to be paid to him as they are delivered by the parties. It is agreed that not more than 25 cts. shall be paid for the bonds and 10 cts. for the stock, to any parties during the pendency of this agreement, except with the permission of Martin."

The bill alleges further: That, for a valuable consideration, the defendant and his firm warranted that the Illinois Company had agreed to pay the firm for the bonds and stock owned by them $250 for each bond and $10 for each share of stock; that relying upon the said representations and warranty the complainant delivered under the contract 1,095 bonds and 4,300 shares of stock and was paid therefor at the contract rate. That the said firm received from the Illinois Company more than they paid complainant for said bonds and stock and profited greatly by reason of their false and fraudulent statements, to an extent unknown to complainant. That complainant first discovered the fraud and the larger amounts received from the Illinois Company in January, 1903.

The complainant offers to return to the firm of R. T. Wilson & Co. whatever bonds and stock may be necessary to put the firm in the position they occupied prior to June 26, 1892. The bill invokes equitable relief because the extent to which the said firm have secretly profited by said transaction is unknown to complainant.

Alternative relief is demanded as follows: First, that a master be appointed to take an account; or, if mistaken in this relief, then, second, that the written contract be reformed so as to agree with the oral contract; or, if mistaken as to the right of the complainant to an accounting or to a reformation of the written contract, then, third, that the contract be rescinded and the defendant be directed to return all of the bonds and shares of stock transferred thereunder. Lastly, the complainant prays, if he be mistaken in all the foregoing prayers, that he may have such other or further relief as to the court may seem just and equitable. The defendant demurs on the ground that the bill shows on its face that the subject-matter of the suit is not within the juris-

diction of a court of equity because the complainant has a plain and adequate remedy at law and is not entitled to the relief prayed for. Confining the allegations of the bill to the facts pleaded and reducing these facts to their last analysis we are convinced that the only cause of action stated is for the recovery of damages based on fraud. That the complainant has a complete and adequate remedy at law we have no doubt and we see no reason for the interposition of a court of equity. There can be no dispute as to what the actual agreement between the parties was because it was reduced to writing, and the reciprocal obligations of the parties are stated in concise and unambiguous language.

In substance R. T. Wilson & Co. agreed to pay the complainant 25 cents on a dollar for the bonds and 10 cents on a dollar for the stock, for all bonds and stock which he brought in, or caused to be brought in, to the firm. The amount due under this contract was fully paid. The accusation against the defendant is that the complainant was induced to enter into the contract by the false and fraudulent statements of the defendant that his firm was to be paid 25 cents and 10 cents, respectively, on the bonds and stock by the Illinois Company and that he would pay complainant the exact sum he received from the Illinois Company. Is it not manifest, if the complainant succeeds in proving the false representations and the averment that more than the contract price was paid by the Illinois Company to the firm of R. T. Wilson & Co., that when he has been paid the difference between what he did receive and what he should have received he will no longer have a cause of complaint against the defendant? It is argued that the amount received from the Illinois Company is unknown and that it is necessary to invoke the powers of a court of equity to compel a discovery in this regard. Assuming for the moment that the difficulty of obtaining testimony affords a reason for turning a complaint in an action at law into a bill in equity, we are unable to see, in the present situation, why there should be any greater difficulty in the one case than in the other. The defendant knows how much he received from the Illinois Company and that company knows how much it paid for the bonds and stock. The books of the company and of the firm undoubtedly contain entries of the transactions. The process of the court will compel the attendance of witnesses and the production of books as effectually in a common-law action as in a suit in equity.

The fact that the bill deals in large figures and states a seemingly complicated transaction tends to obscure the real issue between the parties. Let us test it by a simple illustration, for the principle is the same whether one bond or a thousand bonds are involved. A. agrees to pay $250 to B. for a bond the face value of which is $1,000. A. fraudulently represents that he has an agreement with C. by which C. is to pay $250 for such bonds; that no one else can afford to pay more than $210 and that if B. will sell he will be given the full benefit of the agreement with C. and receive whatever sum C. pays to A. Relying on this representation B. accepts the offer and the sale is consummated. Subsequently he learns that C. paid A. $300 for the bond. Is it not too plain for debate that, on these facts, B.'s remedy is an action at law

to recover damages, the measure of which should not exceed the sum of $50? A court of equity has no jurisdiction of such a controversy. The decree is affirmed.

TOWNSEND, Circuit Judge, heard the argument, participated in the consultations and voted to affirm.